**John K. SNYDER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–231C.**

United States Court of Federal Claims.

Dec. 16, 2002.

Wayne Hartke, Washington, D.C., for plaintiff.

James H. Holl, III, with whom were on the briefs Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

### ORDER TO SHOW CAUSE

SMITH, Senior Judge.

This matter is before the Court on defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the alternative, for Summary Judgment filed on May 18, 1999. Plaintiff filed a brief in opposition on January 15, 2002. On February 28, 2002, defendant filed its reply. Oral argument was held on defendant's motion on March 12, 2002. In response to a post-hearing order, plaintiff filed a Submission of Value and Inventory of Coins on April 15, 2002. Plaintiff filed explanations of the Submission on May 30, 2002, and July 9, 2002.

Defendant's Motion to Dismiss argues that this Court lacks jurisdiction to entertain plaintiff's claim because actions against the assets of failed thrifts and the conduct of the Federal Deposit Insurance Corporation ("FDIC") fall exclusively under the review scheme established by Congress in the Fi-

nancial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). The government's motion raises a somewhat complex question of statutory construction. It seems to the Court, however, that a more basic problem in plaintiff's claim exists.

The Rules of the Court of Federal Claims ("RCFC"), 12(b)(6), provide for dismissal based on the "failure to state a claim upon which relief can be granted." In ruling upon a motion to dismiss, a court must grant the motion "when the facts asserted by the plaintiff do not under the law entitle him to a remedy." *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000). As the Supreme Court reasoned, a RCFC 12(b)(6) motion may dispose of plaintiff's claims if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing a motion to dismiss under RCFC 12(b)(6), the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the nonmovant's] favor." *Id.* However, "conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998).

In the instant matter, plaintiff alleges that the FDIC damaged and lost several coins that were part of a collection plaintiff provided as collateral for a $300,000 promissory note payable to Rushville National Bank ("RNB"). On December 18, 1992, RNB was closed by the Office of Comptroller of the Currency and the FDIC was named as receiver of the failed bank. After requesting (and not receiving) payment from plaintiff on the $300,000 note, the FDIC began proceedings to sell the coin collection at auction. To prevent the auction, in November 1993, plaintiff entered an agreement with the FDIC to purchase the collection for $25,500, which reflected the appraised value of the coin collection plus auction termination costs.

▮ In the Complaint, plaintiff characterized its claim as "a 'taking' for a public purpose since it [the FDIC] denied all economic and beneficial or productive use of the coin collection to Snyder." Pl.'s Compl. ¶ 41. On that theory, plaintiff alleges damages in the amount of $315,000 as just compensation for the government's taking of his coin collection. *Id.* at ¶¶ 39–47. In plaintiff's Brief in Opposition to Defendant's Motion he also asserts "[T]he actions of the government ... constitute a 5th Amendment 'taking' of plaintiff's property, and a breach of contract for which the Government is liable." Pl.'s Br. in Opp'n at p. 31. However, plaintiff's Complaint lacks a specific damage claim under a breach of contract theory. No matter how the claim is characterized, plaintiff limits its allegations and claim to damages to "wrongful misconduct and breach of agreement concerning facts and transactions between FDIC and Snyder *after* the filing of *Hoosier Bancorp, Snyder, Hedrick v. United States* ... and not relating to any prior litigations, claims, or dismissal." Pl.'s Compl. ¶ 31 (emphasis in original). Therefore, the Court will use the *Hoosier Bancorp* filing date of August 29, 1994, as the date to determine if plaintiff can sufficiently allege a set of facts in support of a takings or breach of contract claim that would entitle him to relief.

In assessing the motion to dismiss, the Court must examine each claim separately. First, plaintiff's takings claim is based upon alleged government misconduct occurring after plaintiff completed the purchase of the coin collection on January 11, 1994. Pl.'s Compl. ¶ 18. However, because the FDIC and plaintiff entered an agreement in November 1993, for the return of the coin collection, a takings claim is barred and plaintiff must seek redress under contract theory. *See Home Sav. of America, F.S.B. v. United States,* 51 Fed.Cl. 487, 494–95 (2002). As the Federal Circuit found in *Hughes Comm. Galaxy, Inc. v. United States:*

> "[T]he concept of a taking as compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim. Takings claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than

in its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property." 271 F.3d 1060, 1070 (Fed.Cir.2001) (citing *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978)).

In the instant case, the terms of the November 1993 agreement created plaintiff's rights, and any interference with those rights gives rise to a breach of contract remedy. Therefore, plaintiff's takings claim fails to state a claim upon which this Court can grant relief.

Second, plaintiff alleges that "[T]his case is a breach of contract claim by not delivering the coin collection it [the government] agreed to deliver upon full payment . . . ." Pl.'s Br. in Opp'n at p. 4. The alleged contract is the November 1993 agreement with the FDIC for the release of the coin collection in exchange for three installment payments totaling $25,500. The agreement set forth a payment schedule and provided that "the coins shall be made available for borrower to pick up after the final payment is received." Pl.'s Compl. ¶ 35. The price of the agreement was based on a June 3, 1993, inventory and appraisal of the coin collection obtained by the FDIC. Def. Proposed Findings of Uncontroverted Fact No. 7. The appraisal estimated the total value of the coin collection at $22,722.11. *Id.* On January 11, 1994, plaintiff remitted the final payment under the agreement and expressed a desire to pick up the collection from the FDIC sometime between January 25, 1994 and January 27, 1994. *Id.* at Nos. 13 & 14. Plaintiff did not pick up the coin collection at that time because he declined to sign a Redemption of Collateral Agreement drafted by the FDIC. *Id.* at Nos. 15 & 16. By letter of February 3, 1994, the FDIC advised plaintiff that he could pick up the coins without signing a redemption statement, but requested that plaintiff sign a receipt itemizing each coin delivered into his possession. *Id.* at No. 17. The FDIC sent several more letters indicating it was ready and willing to deliver possession of the coins to plaintiff. *Id.* at Nos. 18–20, 28. On February 25, 1997, plaintiff finally took possession of the coins and signed an inventory list acknowledging receipt of the coins delivered. *Id.* at No. 29.

■ In order for plaintiff's claim to survive the motion to dismiss, plaintiff must allege a set of facts that if proven would entitle him to some form of contract remedy. As the uncontroverted facts demonstrate, plaintiff and defendant both complied with the November 1993 agreement. Plaintiff made the required payments and the FDIC had the coins available for plaintiff to pick up. Plaintiff, however, chose not to pick up the coins until over three years after the final payment was delivered. Even assuming the contract was somehow breached, a review of plaintiff's Complaint and the Submission of Value and Inventory of Coins, reveals that plaintiff has failed to adequately plead any form of damage. First, plaintiff's Complaint fails to allege any specific government misconduct under the November 1993 agreement occurring after August 29, 1994. Furthermore, as the FDIC letters indicate, the coin collection was available for pick up on February 3, 1994, and plaintiff chose not to do so. Second, the coin collection plaintiff received on February 25, 1997, was virtually identical to the collection that plaintiff contracted for in the November 1993 agreement. As plaintiff's Submission illustrates, American Auction Associates prepared a Buyer's Catalog in November 1993, listing the quantity and type of each coin in the collection. The Buyer's Catalog then formed the basis of the bargain for the November 1993 agreement between the FDIC and the plaintiff. Upon receipt of the coin collection on February 25, 1997, plaintiff and the FDIC reviewed and signed a copy of the Buyer's Catalog. A comparison of the two documents reveals that lot 15 and lot 65 each contained a previously unaccounted for coin, and lot 111 and lot 238 each were missing one coin. Therefore, unless plaintiff can demonstrate a net loss from the difference in inventory lists, it does not appear that plaintiff has sufficiently plead a set of facts that could support a breach of contract claim. Plaintiff has put forth no evidence of any loss, much less a $315,000 one.

Based on the preceding analysis, it appears the Court is required to dismiss the matter under RCFC 12(b)(6) for failure to state a

claim upon which relief can be granted. The defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the alternative, for Summary Judgment, would therefore be considered moot. Accordingly, the Court directs plaintiff to show cause by February 14, 2003, why this case should not be dismissed for failure to state a claim. Failure to respond will result in dismissal of the case with prejudice, which operates as a final and adverse decision on the merits.

It is so ORDERED.